IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBORAH L. SEYMOUR,                              CV. 07-1852-MA

            Plaintiff,                              OPINION

    v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.

Rory Linerud
P.O. Box 1105
Salem, OR 97308

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
Brittania I. Hobbs
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

David Morado
Regional Chief Counsel
L. Jamala Edwards
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Ave., Suite 2900 M/S 901
Seattle, WA

    Attorneys for Defendant.

MARSH, Judge

    Plaintiff Deborah L. Seymour seeks judicial review of the

final decision of the Commissioner of Social Security denying her

1 - OPINION

applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-403, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383©)(3).  For the reasons that follow, I AFFIRM the final decision of the Commissioner.

<u>**THE ALJ'S DISABILITY ANALYSIS**</u>

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  <u>See Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform.  <u>Yuckert</u>, 482 U.S. at 141-42.

After the Commissioner denied her applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ. The first hearing occurred on May 11, 2006, at which plaintiff testified, as did Janine Lane, plaintiff's friend, Lyle Laird, plaintiff's brother, Jon Shreeve, plaintiff's partner, and Jeffrey Tittelfitz, a vocational expert.  The hearing was continued to obtain additional evidence.  The hearings set for November 9, 2006 and May 24, 2007 were rescheduled.  Another

hearing was held some ten months later on July 3, 2007, at which plaintiff testified, as did Mr. Tittelfitz.  On July 27, 2007, the ALJ issued a decision finding that plaintiff is not disabled under the Act.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability.  See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff had the following severe impairments:  Grave's orbitopathy, Terrien's degeneration, mild dysthymia, and adjustment disorder.  See 20 C.F.R. §§ 404.1520©), 416.920©).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ found that plaintiff had the residual functional capacity to perform light work where she could lift 20 pounds occasionally and 10 pounds frequently.  The ALJ also found that plaintiff has visual limitations, so that plaintiff should avoid sunlight, bright lights, or moving equipment, and cannot perform work requiring visual acuity or visual fields.  The ALJ determined that plaintiff can understand, remember, and complete simple, infrequently rushed tasks or routines, and occasionally

more familiar complex activities of interest to her.  The ALJ
found that plaintiff should not work with the general public or
deal with large groups of co-workers, and can respond to routine
supervision and maintain personal hygiene.  The ALJ also
concluded that plaintiff would perform best with few changes in
workplace routine and would benefit from help in setting
realistic goals.

 At step four, the ALJ concluded that plaintiff is unable to
perform any past relevant work.  See 20 C.F.R. §§ 404.1565,
416.965.

 At step five, the ALJ concluded that considering plaintiff's
age, education, work experience, and RFC, jobs exist in
significant numbers in the national economy that plaintiff can
perform.  See 20 C.F.R. §§ 404.1560©), 404.1566, 416.960©),
416.966.  Accordingly, the ALJ concluded that Plaintiff is not
disabled under the meaning of the Act.

 In appealing the ALJ's decision to the Social Security
Appeals Council, plaintiff submitted additional evidence in the
form of letters submitted by Drs. Fine Hoffman and Packer LLC
dated July 23, 2007 and July 27, 2007.  (Transcript of Social
Security Administrative Record (Tr.) at 8.)  The Appeals Council
considered the additional evidence and concluded that no change
to the ALJ's decision was warranted.

## ISSUES ON REVIEW

Plaintiff contends that the ALJ made the following errors: (1) improperly rejected plaintiff's testimony; (2) improperly assessed the evidence relating to her mental impairments and failed to develop the record relating to them; (3) improperly assessed the evidence pertaining to her physical impairments and failed to develop the record relating to them; and (4) improperly rejected lay witness testimony.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not

substitute its judgment for that of the Commissioner." <u>Edlund v.</u>
<u>Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

<u>DISCUSSION</u>

**I.   ALJ Did Not Err in Assessing Plaintiff's Credibility.**

In deciding whether to accept subjective symptom testimony,
such as pain or depression, an ALJ must perform two stages of
analysis.  20 C.F.R. § 404.1529.  The first stage is a threshold
test in which the claimant must produce objective medical
evidence of an underlying impairment that could reasonably be
expected to produce the symptoms alleged.  <u>Smolen v. Chater</u>, 80
F.3d 1273, 1282 (9th Cir. 1996).  Here, there is no dispute that
plaintiff presented objective medical evidence in support of her
eye problems, depression, adjustment disorder and anxiety.

At the second stage of the credibility analysis, assuming
there is no affirmative evidence of malingering, the ALJ must
provide clear and convincing reasons for discrediting the
claimant's testimony regarding the severity of the symptoms.
<u>Smolen</u>, 80 F.3d at 1284; <u>see also</u> <u>Morgan v. Comm'r of Soc. Sec.</u>
<u>Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999).  Clear and convincing
reasons may include medical evidence tending to discount the
severity of the claimant's subjective claims.  <u>Smolen</u>, 80 F.3d at
1283.  The ALJ also may consider prior inconsistent statements
concerning the claimant's symptoms and any inconsistency between
the claimant's daily activities and the degree of disability she

6 - OPINION

alleges.  <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 856-57 (9th
Cir. 2001).

If an ALJ finds that the claimant's testimony regarding his
subjective symptoms is unreliable, the "ALJ must make a
credibility determination citing the reasons why the testimony is
unpersuasive." <u>Morgan</u>, 169 F.3d at 599.  In doing so, the ALJ
must identify "what testimony is credible and what testimony
undermines the claimant's complaints." <u>Id.</u>; <u>see also</u> <u>Lester v.</u>
<u>Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995); <u>Dodrill v. Shalala</u>, 12
F.3d 915, 918 (9th Cir. 1993).

Plaintiff contends that the ALJ improperly rejected her
testimony pertaining to a host of physical complaints, including
her double vision, stacked vision, light sensitivity,
difficulties with depth perception, and diminished peripheral
vision.  The ALJ accounted for many of plaintiff's complaints
such as light sensitivity, coordination and depth perception
difficulties in the RFC.  The ALJ determined that any physical
and mental problems alleged by plaintiff beyond those limitations
addressed in the RFC were exaggerated and thus not credible.

The ALJ provided clear and convincing reasons in partially
rejecting plaintiff's subjective symptom testimony.  The ALJ
pointed to specific evidence in the record identifying what
testimony was credible and what testimony was not.  <u>Morgan</u>, 169
F.3d at 599.  For example, the ALJ noted plaintiff's statements

in March 2007 to Dr. McConochie, an examining psychiatrist, that
her surgeries had not resulted in dramatic improvement to her
vision, that her left eye did not focus and that she tripped and
dropped things were inconsistent with nearly contemporaneous
medical evidence provided by plaintiff's treating physician, Dr.
Richard Hoffman, M.D.  Plaintiff's allegations of severe double
vision were undercut by Dr. Hoffman's report that in July 2007
plaintiff's visual acuity was 20/40 in each eye and 20/30 when
using both eyes.  The ALJ also noted that contrary to plaintiff's
claim of irreversible progression of her visual diseases, Dr.
Hoffman reported that she had responded well to treatment and
would have no significant visual impairments that would limit any
activities.  The ALJ also noted inconsistencies between
plaintiff's contention of lack of improvement and her self-
described daily activities, such as walking dogs, reading a
little, doing light housekeeping, and her testimony that she has
maintained her driver's license.  In general, the ALJ found
plaintiff's medical condition had improved and stabilized,
contrary to plaintiff's contention of deterioration.

The ALJ also identified specific evidence in the record
undermining plaintiff's complaints of debilitating depression and
anxiety.  Plaintiff contends that she suffers depression so
severe that she is frequently confined to bed.  The ALJ indicated
the severity of her depression was undercut by a GAF score of 60

by Dr. Northway in July 2006, which indicated a high level of psychological functioning, contrary to that alleged by plaintiff. The ALJ noted that plaintiff's extensive medical record was devoid of any treatment for depression.  Plaintiff has not received counseling or medications for her alleged depression and anxiety, which the ALJ found inconsistent with the severe depression as alleged by plaintiff.  As the ALJ discussed, the lack of treatment relating to plaintiff's alleged depression and anxiety is inconsistent with the extensive treatment plaintiff has received for her physical complaints.

The ALJ's reasons for partially discrediting plaintiff's testimony are clear and convincing and rest on reasonable inferences drawn from the record as a whole.  The findings are sufficiently specific to permit this court to conclude that the ALJ did not discredit plaintiff's testimony arbitrarily.  Morgan, 169 F.3d at 599-600 (ALJ may consider conflict between testimony of subjective complaints and objective medical evidence when assessing credibility); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(ALJ may consider absence of treatment for subjective symptom when assessing credibility).  "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

**II.  The ALJ Did Not Err in Assessing the Evidence of Plaintiff's Mental Impairments.**

The ALJ is responsible for resolving conflicts in the medical record.  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Physicians with the most significant clinical relationship with the claimant are generally afforded more weight than those physicians with lesser relationships. Id.; Lester v. Chater, 81 F.3d at 830.  An ALJ may reject the uncontroverted opinion of a treating or examining physician by providing clear and convincing evidence.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  When such opinions are contradicted, the ALJ may reject the opinion by providing specific and legitimate reasons, which are supported by substantial evidence in the record.  Carmickle, 533 F.3d at 1164; Lester, 81 F.3d at 830-31.

Plaintiff argues that the ALJ improperly assessed the medical evidence pertaining to her cognitive difficulties and borderline intellectual functioning (BIF).  According to plaintiff, the ALJ improperly rejected the opinion of Dr. McConochie, who diagnosed plaintiff with BIF.  I disagree.

Plaintiff underwent a neuropsychological assessment by Dr. McConochie in March 2007, at the request of the Oregon Disability Determination Services to evaluate plaintiff's depression and to

aid in plaintiff's potential qualification for state disability
benefits.  As part of that evaluation, plaintiff performed a
variety of tests, including IQ tests.  As the ALJ discussed,
plaintiff attained a verbal IQ score of 75, and a full scale IQ
of 70.  Plaintiff's aphasia screening test was consistent with
borderline intellectual functioning, but was not suggestive of
brain damage.  Dr. McConochie diagnosed plaintiff with dysthymia,
adjustment disorder, agoraphobia with panic disorder tendencies,
developmental personality disorder, and borderline intellectual
functioning, and concluded that depression was plaintiff's
primary limitation to working.  (Tr. 427-28.)  As part of the
evaluation, Dr. McConochie completed a Medical Source Statement
of Ability to Do Work-Related Activities (Mental), in which he
assessed plaintiff with marked difficulties in plaintiff's
ability to understand, remember, and carry out detailed
instructions due to plaintiff's borderline IQ, limited memory
functioning, and depression.  Dr. McConochie also assessed that
plaintiff would have marked restrictions in her ability to
interact appropriately with the public, and moderate restrictions
in her ability to respond appropriately to work pressures and
changes in the work setting. (Tr. 430-31.)

    In this case, the ALJ furnished specific, clear and
convincing reasons for partially rejecting the opinion of Dr.
McConochie.  As the ALJ discussed, Dr. McConochie's assessment of

11 - OPINION

BIF is inconsistent with plaintiff's past relevant work as a
bookkeeper, which lasted for five years and with a specific
vocational preparation level (SVP) of six to seven.
Additionally, the ALJ noted that severe cognitive limitations as
described by Dr. McConochie were inconsistent with plaintiff's
history and testimony at the hearing that she attended college
for three years, and that she attended normal classes in high
school. (Tr. 527-28.) To be sure, an ALJ may discredit a
physician's opinion that is inconsistent with the record as a
whole. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195
(9th Cir. 2003); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
Cir. 2001). As the ALJ stated, "the discrepancy between the
borderline intellectual function identified by Dr. McConochie and
other elements of the record is so extreme that the possibility
arises that the doctor inadvertently substituted test results of
another individual." Indeed, the ALJ asked plaintiff several
questions at the hearing in order to clarify that potential
mishap. The ALJ inquired whether plaintiff recalled performing
certain elements of the testing, to which plaintiff responded
that she did not recall completing the mathematics portion. The
ALJ noted that perhaps plaintiff's visual difficulties affected
the test results, as Dr. McConochie himself had stated in his
report.

As detailed by the ALJ, there is no evidence in plaintiff's extensive medical file to indicate that her intellectual functioning had significantly "dropped-off" from previous levels. The ALJ also found Dr. McConochie's assessment of BIF to be inconsistent with her current functioning, as evidenced by her testimony that she completed her own applications for disability benefits in which the ALJ found her to be very articulate. (Tr. 529.)

The ALJ also discussed other evidence in the record pertaining to plaintiff's alleged cognitive limitations which were inconsistent with the severity of intellectual limitations described by Dr. McConochie. In July 2006, plaintiff underwent an evaluation by Dr. David Northway, Ph.D. In that evaluation, Dr. Northway diagnosed anxiety disorder and some features of panic disorder, and a cognitive disorder on a rule out basis. Dr. Northway found that plaintiff's performance indicated some cognitive problems. But he stated that plaintiff's intelligence appeared to be in the low to average range and he did not diagnose BIF.

The ALJ also discussed a mental residual functional capacity assessment completed an July 28, 2006, by Dr. Peter LeBray, Ph.D. a reviewing psychologist. Dr. LeBray concluded that plaintiff had moderate limitations in the areas of understanding, remembering, and carrying out detailed instructions. Dr. LeBray

noted mild cognitive deficits, but noted that plaintiff did not
appear to have any brain damage or dysfunction.  Dr. LeBray also
noted moderate limitations in the areas of maintaining extended
attention and concentration, interacting appropriately with the
general public, getting along with peers and co-workers without
distracting them, and responding appropriately to changes in the
work setting, and setting realistic goals or planning
independently.

Here, the ALJ identified clear and convincing reasons for
discounting the opinion of Dr. McConochie.  Contrary to
plaintiff's contention, the ALJ did not substitute his own
opinion for that of medical sources.  The ALJ cited to the
opinions of Dr. Northway and Dr. LeBray to support his partial
rejection of Dr. McConochie.  And, the ALJ cited to the
inconsistencies between the record as a whole, and his own
observations of plaintiff that conflicted with the opinion of Dr.
McConochie.  Morgan, 169 F.3d at 601-602 (finding inconsistencies
in the record, personal observations, and opinion of medical
advisor to be clear and convincing reasons for rejecting
physician's opinion).  As the ALJ noted, he gave plaintiff the
benefit of the doubt, and accounted for some degree of cognitive
limitations in the RFC by limiting plaintiff to primarily simple
tasks, with no demands for rushed production.  The ALJ's partial
rejection of plaintiff's cognitive limitations is supported by

substantial evidence and by inferences reasonably drawn from the record as a whole.  Bayliss, 427 F.3d at 1216.  Even if the evidence would also support the interpretation plaintiff now urges, the court must defer to the Commissioner's decision. Batson, 359 F.3d at 1193; Andrews v. Shalala, 53 F.3d at 1039-40.

Plaintiff also contends that the ALJ should have recontacted Dr. McConochie before partially rejecting his opinion. According to plaintiff, if Dr. McConochie had been asked, he would have opined that plaintiff's limited intellectual functioning requires additional work restrictions, and the ALJ should have developed the record further.  "'The claimant bears the burden of proving that she is disabled.'"  Bayliss, 427 F.3d at 1217 (quoting Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999)).  The ALJ's duty to develop the record and conduct an appropriate inquiry is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.  In this case, the very detailed report submitted by Dr. McConochie was neither ambiguous or inadequate.  The record relating to plaintiff's mental impairments, as the ALJ concluded, was adequate to allow for proper evaluation of the evidence and accordingly, the ALJ had no duty to develop the record further. Bayliss, 427 F.3d at 1217; Mayes, 276 F.3d at 459-60.

## III. ALJ Did Not Err in Assessing the Evidence of Plaintiff's Physical Impairments.

Plaintiff contends that the ALJ misunderstood plaintiff's visual impairments to be a function of visual acuity, and thus the ALJ improperly relied upon a July 5, 2007 letter from Dr. Hoffman, her treating physician, for her eye-related problems opining that plaintiff had no significant visual impairments in her abilities. According to plaintiff, her double vision, stacking vision, and tearing prevents her from working in any capacity.

In this case, following the hearing on July 3, 2007, Dr. Hoffman submitted a letter dated July 5, 2007, stating that although plaintiff required ongoing care in the form of weekly injections, her condition had stabilized. Additionally, Dr. Hoffman stated that "[h]er current visual acuity is 20/40 in each eye. With both eyes she was able to see 20/30. With a visual acuity at this level I believe [plaintiff] has no significant visual impairment that would limit any activities." Plaintiff now contends Dr. Hoffman's July 5, 2007 letter was inaccurate because it refers only to visual acuity. Additionally, plaintiff speculates that the ALJ deliberately sought information from Dr. Hoffman only pertaining to visual acuity, as opposed to double vision or stacking vision "in an attempt to find a basis to

reject her claim."  Plaintiff's arguments are undermined by the thorough analysis of the ALJ.

It is clear from the ALJ's decision that he examined plaintiff's extensive medical records relating to her visual impairments.  Following a detailed review of those medical records, the ALJ concluded that plaintiff has been symptomatic for brief periods, and that her overall functioning remained essentially intact:

> [Plaintiff's] overall level of functioning, in view of her primary eye-related symptoms, is shown in the report of Dr. Lees in June 2003, after the alleged onset, and of Dr. Hoffman in July 5, 2007.  Dr. Lees concluded that [plaintiff] was able to engage in work-related activities such as standing, walking, or lifting, as well as carrying, handling objects, and traveling.  Dr. Hoffman stated that [plaintiff] would have no significant visual impairment that would limit any activities.  [Plaintiff's] abilities in the period of symptomatic treatment is accurately shown in the assessment of Dr. Jensen in April 2004.  She found that, in addition to an overall limitation to light work, [plaintiff] only had visual limitations in the areas of near acuity, and field of vision; she also should be precluded from tasks involving work hazards.  (Tr. 26.)

Based upon the review of the medical evidence, the ALJ determined that plaintiff's RFC required some visual limitations--"she should avoid sunlight, bright light, or moving equipment, and cannot perform work requiring visual acuity or visual fields."  The ALJ's assessment and resulting RFC is supported by

substantial evidence in the record.  Where the evidence supports
the Commissioner's conclusion, the Commissioner must be affirmed;
"the court may not substitute its judgment for that of the
Commissioner."  Edlund, 253 F.3d at 1156.

Contrary to plaintiff's argument, I also conclude that the
ALJ had no duty to develop the record further pertaining to
plaintiff's double vision, stacked vision, and tearing.  As the
ALJ concluded, the record relating to plaintiff's visual
impairments was neither ambiguous nor inadequate to make a
disability determination.  Bayliss, 427 F.3d at 1217; Mayes, 276
F.3d at 459-60; Tonapetyan, 242 F.3d at 1150.

With respect to plaintiff's contentions that the ALJ was
biased against his client (Plaintiff's Opening Brief at 18) and
that the ALJ intentionally sought irrelevant material from
plaintiff's treating physician in an effort to reject plaintiff's
claim (Id. at 22), I find them meritless.  ALJ's and similar
quasi-judicial administrative officers are presumed to be
unbiased.  Verduzco v. Apfel, 188 F.3d 1087, 1089-90 (9th Cir.
1999).  The burden of rebutting this presumption, by showing a
conflict of interest or some other basis for disqualification, is
on the party asserting bias.  Id. (citing Schweiker v. McClure,
456 U.S. 188, 195 (1982)).  Indeed, the burden is a heavy one,
requiring a claimant to show a conflict of interest, or some
other specific conduct, so extreme that it deprived the hearing

18 - OPINION

of the fundamental fairness mandated by due process.  See
Schweiker, 456 U.S. at 195; Verduzco, 188 F.3d at 1089.

Plaintiff's contentions of bias and inappropriate conduct by
the ALJ amount to little more than speculation.  Plaintiff cites
to nothing in record to substantiate her contention of bias.   If
anything, a review of the record indicates it was plaintiff who
failed in keeping the ALJ apprised of her ongoing treatment for
her visual conditions.  To be sure, at the start of the July 3,
2007 hearing, the ALJ learned that plaintiff had undergone two
additional eye surgeries in January 2007.  Plaintiff surmises,
without support, that following the July 3 hearing, the ALJ sent
a misleading letter to Dr. Hoffman in order to generate Dr.
Hoffman's July 5, 2007 allegedly incomplete response.  Plaintiff
fails to explain why she could not obtain the purported
misleading letter, if indeed one existed, from her own treating
physician.  Furthermore, a review of the entire record indicates
that the ALJ conducted a fair hearing, free of any inappropriate
conduct or bias.  Plaintiff's contentions to the contrary are
baseless.

**IV.  ALJ Did Not Err in Assessing the Lay Witness Testimony.**

Lay witness testimony as to a claimant's symptoms or how an
impairment affects his ability to work is competent evidence,
which the ALJ must take into account.  Lewis v. Apfel, 236 F.3d
503, 511 (9th Cir. 2001); see also Dodrill v. Shalala, 12 F.3d at

919; but cf. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing to account for lay witness testimony about a claimant's serious coughing problems).  The ALJ is required to account for competent lay witness testimony, and if he rejects it, provide germane reasons for doing so.  Lewis, 236 F.3d at 511.

Plaintiff argues that the ALJ provided inadequate reasons for rejecting the lay testimony about plaintiff's limiting conditions.  Plaintiff also contends that the ALJ's discussion of the lay testimony, in discussing that testimony as a group, fails because the ALJ did not provide germane reasons specific to each witness.  I disagree.

Three lay witnesses testified at the May 11, 2006 hearing. Ms. Lane, plaintiff's friend, testified that plaintiff lived with her for six months in 2001 to 2002 and discussed how plaintiff bumped into things and fell down.  And, Ms. Lane testified that plaintiff had difficulty remembering things and reported that plaintiff gets nauseated looking at a computer.  Ms. Lane also testified that plaintiff is depressed and irritable and somewhat isolated.  However, Ms. Lane stated that plaintiff was improving, but that her peripheral vision appeared poor.

Mr. Laird, plaintiff's brother, testified that plaintiff lived with him on and off in 2002 and 2004 for approximately six months each time.  He stated that plaintiff stumbled nearly every

time she got up, and that she would hold onto the wall in order
to negotiate around the house due to her double vision.   Mr.
Laird also testified that plaintiff suffered double vision, but
that she seemed improved in 2006 over 2002.

Mr. Shreeve, plaintiff's partner, testified that plaintiff
struggled to grab onto things, and that she sometimes dropped
them.  Mr. Shreeve noted plaintiff has difficulty with double
vision.  He also testified that plaintiff has had difficulty
remembering little things, like setting something down and being
unable to find the item back.  Mr. Shreeve testified that
plaintiff has improved following her operations.

The ALJ gave the lay witness testimony limited weight.  The
ALJ discussed the testimony of Mr. Laird, Mr. Shreeve, and Ms.
Lane as follows:

> [T]heir statements in May 2006 represents
> [plaintiff's] functioning during a short time
> span, and prior to additional medical
> improvement.  The static or even
> deteriorating visual condition they relate is
> not borne out by the medial record, and their
> allegations that claimant has trouble walking
> or dropping things is not consistent with the
> opinion of providers such as Dr. Hoffman and
> Dr. Lees.  Much of their testimony also
> relates to depression, which in turn is
> related to the claimant's medical condition.
> Her condition has improved.  Notably, their
> testimony does not suggest that the claimant,
> as she reports, is frequently confined to
> bed.  There is little indication of the panic
> which the claimant alleges.  The limitations
> which this testimony does credibly establish

are not in excess of the claimant's residual
functional capacity.  (Tr. 29.)

Here, the ALJ adequately accounted for the lay witness
testimony.  The ALJ detailed specific reasons for partially
rejecting the testimony of Ms. Lane, Mr. Laird and Mr. Shreeve.
Lay witness testimony may be rejected where it is inconsistent
with medical evidence.  Lewis, 236 F.3d at 511.  As the ALJ
discussed, he found that the lay testimony given in 2006 was
somewhat dated, in that plaintiff had experienced continued
medical improvement following two surgeries in 2007.  To be sure,
Ms. Lane, Mr. Laird, and Mr. Shreeve each expressed that
plaintiff's condition had improved somewhat by 2006.  In sum, I
find the ALJ provided germane reasons, which applied to each
witness, for discounting the lay witness testimony, supported by
substantial evidence in the record.  Id. at 512.

Plaintiff's contention that the ALJ improperly rejected the
lay witness testimony as a group instead of individually fails.
It may be preferable, perhaps necessary, in some cases to discuss
the germane reasons for each witness separately.  However,
controlling case law does not require that the ALJ discuss them
separately if the same reasons apply to all of them.  See Lewis,
236 F.3d at 512 (upholding ALJ's treatment of lay testimony by
mother and brother together as "family members" as adequate).  An
ALJ must consider all the lay testimony and adequately account

for that testimony, and if it is rejected, provide specific germane reasons.  <u>Nguyen</u>, 100 F.3d at 1467.  The ALJ met that standard in this case.

## **Conclusion**

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.  This action is DISMISSED.

IT IS SO ORDERED.

DATED this _23_ day of MARCH, 2009.

/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge